IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 08-00045-01-CR-W-NKL |
| LINDA KAY GONZALES, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**TO ACCEPT DEFENDANT'S GUILTY PLEA**

On February 8, 2008, I held a change-of-plea hearing after this case was referred to me by United States District Judge Nanette K. Laughrey. I find that Defendant's plea was voluntary and therefore recommend that it be accepted.

## *I. BACKGROUND*

On February 8, 2008, Defendant waived indictment and an information was filed charging her with one count of mail theft, in violation of 18 U.S.C. § 1708. A change-of-plea hearing was held on February 8, 2008. Defendant was present, represented by retained counsel F.A. White, Jr. The government was represented by Assistant United States Attorney Jonh Cowles. The proceedings were recorded and a transcript of the hearing was filed on February 11, 2008.

## *II. AUTHORITY OF THE COURT*

The authority of federal magistrate judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. See Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991); Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of *de novo* review by a district judge preserves the structural guarantees of Article III. Torres, 258 F.3d at 795. Applying the Peretz holding and adopting the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. (quoting Williams, 23 F.3d at 633). Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the key." Id. (quoting Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case and controversy clause. Id. Because plea proceedings are submitted to the district court for

approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge. Id. Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the District Court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### III. FINDINGS OF FACT

1. The parties consented to the delegation of the change of plea to the magistrate judge (Tr. at 19-20).

2. On February 8, 2008, Defendant waived indictment and an information was filed charging her with one count of knowingly and without lawful authority, stealing United States mail and articles therefrom, consisting of checks from payment envelopes from the Citibank Credit Card facility in Kansas City, Missouri, in violation of 18 U.S.C. § 1708. The court read the charge against Defendant and Defendant indicated that she understood the nature of the charge (Tr. at 7).

3. The statutory penalty for mail theft is not more than five years imprisonment, a fine of not more than $250,000, a supervised release term of not more than three years, a $100 mandatory special assessment fee, and the potential for an order of restitution (Tr. at 7). Defendant was informed of the penalty range and indicated that she understood (Tr. at 7-8).

4. Defendant was advised of the following:

   a. That she has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 8);

   b. That she has the right to assistance of counsel throughout the trial (Tr.

at 8);

      c.      That Defendant is presumed innocent, and the government has the burden of coming forward to prove Defendant's guilt beyond a reasonable doubt (Tr. at 9);

      d.      That Defendant's attorney would have the opportunity to cross-examine the government's witnesses (Tr. at 8, 9);

      e.      That Defendant has the right to testify but does not have to, and that the jury could not make an adverse inference from the fact that Defendant may not testify at trial (Tr. at 9-10);

      f.      That Defendant has the right to subpoena witnesses to testify on his behalf (Tr. at 10); and

      g.      That Defendant has the right to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 11).

5.      Defendant was informed and understood that by pleading guilty, she was giving up all of the rights described above (Tr. at 11).

6.      Defendant was informed that during the change-of-plea proceeding, she would be placed under oath and questioned by counsel and the judge (Tr. at 11-12). Defendant was further informed that she must answer questions truthfully while under oath (Tr. at 12). Defendant stated that she understood (Tr. at 12).

7.      There has been open file discovery in this case (Tr. at 12). If this case were to proceed to trial, the government's evidence would be that Defendant was a manager in the probate unit of the Citibank Credit Card facility in Kansas City, Missouri (Tr. at 13). As a manager,

4

Defendant had access to the mail room where payments were mailed from the estates of Citibank customers who had died (Tr. at 13). Between January of 2003 and June of 2004, Citibank investigators did an audit and determined there were numerous instances in which the estates of deceased customers believed they had mailed payments to Citibank that had never arrived (Tr. at 13). In conducting the audit, investigators became suspicious of Defendant with regard to the missing mail (Tr. at 13). They learned Defendant had four open credit card accounts and noticed she had applied large payments toward her own accounts within the same time frame as the mailed payments were missing (Tr. at 13). Investigators eventually determined the payments on Defendant's four credit card accounts were actually checks that were supposed to have been received at the Citibank facility (Tr. at 14). The amount of the payments totaled $76,737.18 (Tr. at 14). On July 12, 2004, Citibank investigator Dennis Anderson confronted Defendant and she admitted to diverting the mail, stealing the checks, and using them to pay her own credit card accounts (Tr. at 14). She indicated she had done so from approximately January of 2003 until July of 2004 (Tr. at 14). Defendant explained that she simply went to the mail room at Citibank and stole the mail before it was actually delivered to or scanned by the facility so that Citibank did not have any record of receiving the checks (Tr. at 14).

8. Defense counsel stated that he had reviewed the government's file and confirmed from his own independent investigation that it was wise for his client to plead guilty (Tr. at 12).

9. Defendant was placed under oath (Tr. at 12). Defendant testified that sometime between January of 2003 and July of 2004, she stole checks from the United States mail from the Citibank Credit Card facility in Kansas City, Missouri (Tr. at 15). At the time she stole the mail, Defendant knew what she was doing was wrong yet did so intentionally (Tr. at 15). She testified she

5

stole the checks from the mail to help offset her own credit problems (Tr. at 15-16). The total amount of checks Defendant stole was approximately $76,000 (Tr. at 16).

10. There is not a plea agreement in this case (Tr. at 16).

11. No one had made any threats or any other promises in order to get Defendant to plead guilty (Tr. at 17).

12. Defendant is satisfied with the representation she has received from Mr. White (Tr. at 17). There is nothing he has done that Defendant did not want him to do, and there is nothing she wanted him to do that he has not done (Tr. at 17).

13. Defendant is forty-four years old and completed some college (Tr. at 17-18). She reads, writes, and understands the English language (Tr. at 18). Defendant was not under the influence of medication, drugs, alcohol, or anything else that would affect her ability to intelligently waive her right to a jury trial (Tr. at 18). Defendant has no physical or mental health concerns that would prevent her from entering an intelligent and voluntary plea of guilty to this charge (Tr. at 18).

14. Defendant tendered a plea of guilty to the information (Tr. at 19).

### IV. ELEMENTS OF THE CHARGED OFFENSE

The elements necessary to sustain a conviction for mail theft include: (1) that mail had been stolen from an authorized depository for mail matter; and (2) that the defendant willfully intended to steal such mail. United States v. Hopping, 668 F.2d 398, 399 (8th Cir. 1982); United States v. Byrd, 542 F.2d 1026, 1029 (8th Cir. 1976); see also 18 U.S.C. § 1708.

### V. CONCLUSION

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a magistrate judge for issuance of

a report and recommendation on whether Defendant's guilty plea should be accepted.

2. Defendant has consented to having her plea taken by a magistrate judge.

3. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the information.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting Defendant's guilty plea and adjudging Defendant guilty of the act charged in the information.


*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
February 12, 2008